RICHARD F. WERNICK AND BEATRICE WERNICK, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Wernick v. Commissioner
Docket No. 27684-83.
United States Tax Court
T.C. Memo 1985-349; 1985 Tax Ct. Memo LEXIS 282; 50 T.C.M. (CCH) 435; T.C.M. (RIA) 85349; July 16, 1985. Arthur Levy, for the petitioners. Joseph M. Abele, for the respondent. GUSSIS
MEMORANDUM OPINION
*283 GUSSIS, Special Trial Judge: This case was assigned to and heard by Special Trial Judge James M. Gussis, pursuant to the provisions of section 7456(c) and (d) of the Internal Revenue Code[1] and General Order No. 8, 81 T.C. XXIII (1983). Respondent determined a deficiency in petitioners' 1980 Federal income tax in the amount of $1,142. The issue for decision is whether an award of $3,322.65, paid to Richard F. Wernick (hereinafter petitioner) by the American Society of Composers, Authors and Publishers is includable in petitioner's 1980 income under section 74(a). This case was submitted fully stipulated and the stipulated record is incorporated herein by this reference. Petitioners resided in Media, Pennsylvania at the time they filed their petition in this case. During 1980, Richard F. Wernick was employed as a professor of music at the University of Pennsylvania. In the past, petitioner has been the recipient of numerous awards made in recognition of his achievements in the field of music. In 1977, petitioner received the Pulitzer Prize for his composition *284 "Vision of Terror and Wonder." During 1980 petitioner was a member of the American Society of Composers, Authors and Publishers which serves as a licensing organization. Royalties are paid to ASCAP for the public performance of the music of ASCAP members and the royalties are distributed to the members based on performances of their works that appear in the objective survey system administered by ASCAP. ASCAP makes annual special awards, consisting of standard awards and popular awards, to its members. The awards are determined by the ASCAP Standard and Popular Awards Panel, which consists of distinguished members of the music community who are changed from time to time to ensure the broadest possible representation. They are neither members nor employees of ASCAP. The awards are intended for ASCAP members for noteworthy achievements in the field of music for which they were not otherwise paid royalties or compensation. The standard award was limited to ASCAP members who applied for consideration and who did not receive in excess of $20,000 in royalties for musical compositions. In May 1979 petitioner applied in writing to have certain musical accomplishments considered for *285 the standard award by the appropriate panel. In 1980 he was selected as recipient of a standard award in the amount of $3,322.65 which was paid to him during the year in four installments. Petitioner excluded this amount from gross income on his 1980 income tax return. As a general rule section 74(a) states that amounts received as prizes and awards are includable in gross income. There are however two exceptions to this rule. First, section 74(a) does not apply to scholarship and fellowship grants covered by section 117. Second, gross income does not include prizes and awards made primarily in recognition of religious, charitable, scientific, educational, artistic, literary, or civic achievement, but only if the recipient was selected without any action on his part to enter the contest or proceedings, and the recipient is not required to render substantial future services as a condition to receiving the prize or award. Section 74(b). The parties in the present case have stipulated that petitioner was not required by ASCAP to render future services as a condition to receiving the $3,322.65 award. In addition, it has been stipulated that recipients of the ASCAP Special Awards *286 for music are chosen for their noteworthy achievement in the field of music. Respondent contends however that the award does not qualify for exclusion under section 74(b) because petitioner was selected for the 1980 Special Award in music as a result of his actions to enter the award proceedings. As stated earlier, only ASCAP members are eligible for the awards. In order to be considered for such awards, members submitted an information form to the appropriate panel (i.e., the standard awards panel and the popular awards panel) indicating the member's most recent musical compositions, performances, records, rewards and prizes, premiers and commissions. The index department of ASCAP catalogued a member's past accomplishments. Petitioner provided the appropriate information to the panel in letter form. Respondent argues that petitioner violated the prohibition in section 74(b)(1) by submitting the requisite information to the panel and hence the award is not excludable from gross income under the statute. Respondent relies upon Isenbergh v. Commissioner,31 T.C. 1046 (1959), which involved a Rockefeller Public Service Award received by the taxpayer, who was then *287 Deputy General Counsel of the Atomic Energy Commission. The award was designed to give special recognition to outstanding public service by civilians in the executive branch of the Federal Government and to establish incentives for the continuance and advancement of those in public service. The essential criteria were evidence of demonstrated value to the Government service and evidence of future value in terms of general promise and usefulness or in terms of specific future assignment. The award was intended to be sufficient to enable the recipient, at no financial sacrifice to himself, to spend from six to twelve months in residence at an institution of the recipient's choice or in some comparable educational activity. In his application the taxpayer, in addition to detailed information concerning his career background with the Government, submitted a proposed program of a year's study in Paris of the Schuman Plan and other forms of international cooperation to determine the desirability, feasibility and possible form of a supranational organization concerned with use of atomic energy for electric power and other peaceful purposes. The taxpayer was not nominated by a Governmental *288 agency to receive the award. He became a candidate for the award and was selected as a result of the direct application prepared and filed by him, accompanied by his proposed program of study. In holding that the award was not excludable from gross income under section 74(b), the Court stated: It is clear on the affirmative evidence that [taxpayer] became an applicant selected for the Award as a result of his own direct application . . . . The selection of [taxpayer] was initiated by action which he himself took to enter the contest or proceeding. . . . . [A]t the time officially announced as the last day for filing applications, [taxpayer] has not been selected for the Award and was not known to be a candidate. Only later, upon his filing of his own direct application with accompanying data, was he considered and selected. Under these circumstances, we think that not only can it be said that [taxpayer] was not selected without any action on his part to enter the contest or proceeding, in view of the unequivocal language of section 74(b)(1), but that a contrary view is affirmatively established. 31 T.C. at 1052. So too here. It is undisputed that *289 petitioner applied in writing to be considered for the award he received from ASCAP. It is clear that petitioner was not selected without any action on his part to enter the contest or proceeding; therefore, the award is not excludable from gross income under section 74(b). Petitioner argues that the ASCAP awards are not different from the Pulitzer prize, which is specifically excluded from gross income by section 1.74-1(b), Income Tax Reg. Petitioner argues that the application process for the ASCAP awards is no different from the nomination process for the Pulitzer prize; thus, petitioner argues that he was selected to receive the ASCAP award without any action on his part to enter the contest or proceeding. The record, however, does not support petitioner's contention. The record contains a copy of an "Entry Form for a Pulitzer Prize". There is a space on such form for the "Signature of person sponsoring this entrant"; beneath that appears the notation "(may be self)". We cannot infer from this notation, as petitioner apparently would have us do, that Pulitzer prize winners typically or generally nominate themselves. Indeed, the entry form seems to us more supportive of *290 the opposite inference, i.e., that Pulitzer prize winners typically are nominated by some third party. [2] In contrast, it is clear that all ASCAP award winners were required to file a written application in order to be considered for an award. Accordingly, we reject petitioner's argument that the ASCAP awards are not different from the Pulitzer prize. Our holding that petitioner was not selected without any action on his part to enter the contest or proceeding, as required by section 74(b), makes it unnecessary for us to consider respondent's alternative argument that the ASCAP awards are compensatory *291 in nature and therefore are not excludable from gross income under section 74(b). We conclude on this record that the award paid to petitioner in 1980 is not excludable from gross income under the provisions of section 74(b). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated.↩
2. Both section 1.74-1(b), Income Tax Regs.↩, and the legislative history from which the regulation apparently is derived, appear premised on the assumption that Pulitzer prize recipients are selected without any action on their part to enter the contest or proceeding. See H.R. Rept. No. 1337, 83d Cong. 2d Sess. 11, A 27 (1954); S. Rept. No. 1622, 83d Cong. 2d Sess. 13, 179 (1954). We express no view as to whether, as petitioner contends, a Pulitzer prize winner who nominated himself would be entitled to exclude the award from gross income under the provisions of section 74(b).